# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ELEMENT BIOSCIENCES, INC. | |
| Plaintiff, | C.A. No. 25-1175-JLH-EGT |
| v. | |
| ILLUMINA, INC., | |
| Defendant. | |

## PLAINTIFF ELEMENT'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT ILLUMINA'S PARTIAL MOTION TO DISMISS

*Of Counsel:*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Kevin P.B. Johnson
Andrew J. Bramhall
Margaret Shyr
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com
andrewbramhall@quinnemanuel.com
margaretshyr@quinnemanuel.com

David Bilsker
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davidbilsker@quinnemanuel.com

Andrew Tigchelaar
295 5th Ave.
New York, NY 10016
(212) 849-7000
andrewtigchelaar@quinnemanuel.com

Dated: January 5, 2026

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
jsiew@ycst.com
dmackrides@ycst.com

*Attorneys for Plaintiff*
*Element Biosciences, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................1

II.    FACTUAL BACKGROUND..........................................................................................2

    A.    The '161 Patent ....................................................................................................2

    B.    The '161 Patent Prosecution History .................................................................4

    C.    Illumina's Patent Claims And Statements During Prosecution .............................5

III.    LEGAL STANDARD...................................................................................................6

IV.    ARGUMENT................................................................................................................7

    A.    Illumina Impermissibly Generalizes the Claims................................................7

    B.    Illumina Does Not Show Any Claim Is Representative ......................................8

    C.    *Alice* Step One: The '161 Claims Are Not Directed To An Abstract Idea .............9

        1.    The '161 Claims Recite Specific Improvements To SBS.........................9

        2.    Illumina Mischaracterizes The Focus Of The Claims .............................11

        3.    Sequencing Claims Like Those Here Cannot Be Performed By Hand...............................................................................................................15

        4.    Illumina's Statements To Obtain Its Own Patents Support Eligibility.................................................................................................16

    D.    *Alice* Step Two: The '161 Claims Recite Inventive Concepts............................17

        1.    The Claims Taken As A Whole Recite Inventive Applications ...............17

        2.    Illumina Conflates Invalidity With Ineligibility .......................................19

        3.    Factual Disputes Preclude Dismissal........................................................20

V.    CONCLUSION.............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>Cases</u>

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..................................................................................7, 12, 18

*Adaptive Avenue Assocs., Inc. v. Micro Elecs., Inc.*,
  No. 21-1786-MN, D.I. 20 (D. Del. May 17, 2022)....................................................................9

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022) ................................................................................................17

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).................................................................1, 7, 9, 11, 17, 19, 20

*Anderson v. Kimberly-Clark Corp.*,
  570 F. App'x 927 (Fed. Cir. 2014) ...........................................................................................5

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016).......................................................................................18, 20

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018).................................................................................6, 17, 20

*BSG Tech LLC v. BuySeasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)...............................................................................................19

*buySAFE, Inc. v. Google Inc.*,
  964 F.Supp.2d 331 (D. Del. 2013), *aff'd*, 765 F.3d 1350 (Fed. Cir. 2014) ...........................15

*Cal. Institute of Tech. v. Broadcom Ltd.*,
  25 F.4th 976 (Fed. Cir. 2022) ................................................................................................12

*CardioNet, LLC v. InfoBionic, Inc.*,
  955 F.3d 1358 (Fed. Cir. 2020).......................................................................1, 11, 12, 14, 16

*CareDx, Inc. v. Natera, Inc.*,
  40 F.4th 1371 (Fed. Cir. 2022) ..............................................................................................18

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019)...............................................................................................19

*Contour IP Holding LLC v. GoPro, Inc.*,
  113 F.4th 1373 (Fed. Cir. 2024) ............................................................................1, 7, 8, 11, 15

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
   50 F.4th 127 (Fed. Cir. 2022) ....................................................................7

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018)..........................................................7, 15, 17

*Cybergenetics Corp. v. Institute of Environmental Science and Research*,
   490 F.Supp.3d 1237 (N.D. Ohio 2020), *aff'd without op.* 856 F. App'x. 312
   (Fed. Cir. 2021)..........................................................................13, 14

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011)............................................................15

*Data Health Partners, Inc. v. Teladoc Health, Inc.*,
   734 F. Supp. 3d 315 (D. Del. 2024) ........................................................5

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)....................................................7, 8, 9, 12, 17

*Genetic Techs. Ltd. v. Merial LLC*,
   818 F.3d 1369 (Fed. Cir. 2016)..............................................................18

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ................................................................7

*Intellectual Ventures I LLC v. Ubiquiti, Inc.*,
   No. 23-865-JLH, D.I. 19 (D. Del. May 21, 2024) ....................................9

*JSDQ Mesh Techs., LLC v. Fluidmesh Networks, LLC*,
   No. 16-212-GMS, 2016 WL 4639140 (D. Del. Sept. 6, 2016)...........9, 10

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
   942 F.3d 1143 (Fed. Cir. 2019)................................................11, 13, 17

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016).................................................1, 10, 11, 14, 16

*Mobile Acuity Ltd. v. Blippar Ltd.*,
   110 F.4th 1280 (Fed. Cir. 2024) ..............................................................8

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
   998 F.2d 1192 (3d Cir. 1993)....................................................................5

*Pragmatus Telecom, LLC v. Genesys Telecomms. Lab'ys, Inc.*,
   114 F. Supp. 3d 192 (D. Del. 2015)..........................................................9

*Redwood Techs., LLC v. Netgear, Inc.*,
   No. 22-1272-GBW, 2024 WL 4591852 (D. Del. Oct. 28, 2024) ............12

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020)...................................................................................8

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017)..............................................................................1, 13

*Uniloc USA, Inc. v. AVG Techs. USA, Inc.*,
    No. 16-393, 2017 WL 1154927 (E.D. Tex. Mar. 28, 2017), *aff'd sub nom.*
    *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890 (Fed. Cir. 2019) ........................8

*Veeva Sys. Inc. v. Tact.ai Techs., Inc.*,
    No. 23-1032, 2024 WL 2848335 (D. Del. June 5, 2024) ......................................11

*XY, LLC v. Trans Ova Genetics, LC*,
    968 F.3d 1323 (Fed. Cir. 2020)..........................................................................1, 6, 13

## Rules / Statutes

35 U.S.C. § 101 ............................................................................................... *passim*

MPEP § 2106.05(b) ...........................................................................................6

Fed. R. Civ. P. 12(b)(6).................................................................................7, 18

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Illumina's motion to dismiss (D.I. 25-26) challenges U.S. Patent No. 8,612,161 ("'161 Patent"), arguing its claims are invalid under § 101.  Illumina's argument fails.

The '161 Patent claims recite exactly the type of technological improvements the Federal Circuit has repeatedly held patent-eligible—specific methods for solving concrete technical problems caused by technical limitations in the design and implementation of DNA sequencing-by-synthesis ("SBS").  As the specification describes and the allegations detail, (D.I. 20) the claimed methods and systems address (1) "dephasing" errors that cause nucleotide base readouts to fall out of sync over time; (2) imaging artifacts caused by non-uniform illumination; and (3) spectral crosstalk from overlapping dye emissions—all physical phenomena that adversely impact SBS by degrading accuracy.  The claims recite highly specific, human-engineered solutions for correcting those phenomena: how to obtain data and use ratio-contribution analysis at interrogation positions to correct phasing errors, field flattening to remove spatially correlated noise, and crosstalk matrices to correct intensity data.  The '161 Patent thus enables high-fidelity SBS not previously achievable.  Under *McRO, CardioNet, Thales, XY* and others, such claims that recite practical applications of algorithms to improve specific technological processes are patent-eligible.

Illumina's contrary arguments fail at every step.  At *Alice* Step One, Illumina strips the claims of their technological context and reduces them to mere math—the exact "impermissibly high level of generality" the Federal Circuit rejected in *Contour IP*.  But the claims are not directed to mathematics in the abstract; they are directed to specific, improved sequencing processes that correct phenomena unique to SBS.  At *Alice* Step Two, Illumina ignores that the ordered combination of claim elements represents a non-conventional arrangement the USPTO found inventive, and that whether these methods were "well-understood, routine, and conventional" is a fact dispute inappropriate for early resolution.

The fallacy of Illumina's arguments is highlighted by its own representations to the USPTO and to the public in pursuit of its own patents.  As one example, in prosecuting highly similar patent claims years after the '161 Patent, Illumina argued that methods for correcting phasing issues during sequencing "are not directed to an abstract idea" but rather represent sequencing "improvements" deserving of patent protection.  *See infra* § II.C.  Contrary to its arguments against the '161 claims, Illumina stated to the USPTO that that such methods and SBS cannot be performed by pen and paper.  Illumina currently lists multiple phasing correction patents on its virtual marking page for its own products.  Illumina's § 101 arguments here are irreconcilable with its own conduct—either its motion against Element is wrong, or Illumina has obtained patents through misrepresentation and is now engaging in false marking.

Because Illumina cannot meet its heavy burden of proving ineligibility by clear and convincing evidence, its motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    The '161 Patent

The '161 Patent covers methods, apparatuses, and systems for determining nucleotide sequences using data obtained from SBS methods.  D.I. 20, First Amended Complaint ("FAC") ¶102.  In SBS, template DNA is immobilized on a solid surface, then polymerase and fluorescently-labelled nucleotides (bases) are introduced, and the labelled bases are incorporated into a growing double-stranded nucleic acid and detected using a laser or fluorescent microscope by correlating a particular fluorescent or dye marker to a specific base.  D.I. 21, Ex. A ("'161 Pat.") at 28:12-23.  Using reversibly terminated nucleotides and fluorescent labels, in each SBS cycle, a base is incorporated and the fluorescent signal is detected, then the fluorescent moiety and reversible terminator are removed.  *Id.* at 28:23-26; 28:37-45.  The '161 Patent addresses technical problems of base incorporation errors and artifacts that occur during SBS.  FAC ¶102.

The '161 Patent acknowledges that while SBS systems were known, there was "a continued need for methods and compositions for increasing the fidelity of sequencing nucleic acid[s]." '161 Pat. at 1:38-40. The '161 Patent provides, among other things, specific solutions to a problem referred to as "[d]ephasing." *Id.* at 40:1. Sequencers read millions of DNA fragments in parallel during each incorporation cycle. *Id.* at 40:1-8. Incorporation errors (*e.g.*, addition of extra bases or no base in one cycle) can shift the phase of some strands, causing base readouts to "lead ahead or lag behind the cycle number." *Id.*; *see also id.* at 40:48-62 (discussing "[s]equence [l]ead"); 41:25-29, 41:41-46 (discussing "[s]equence [l]ag"). Accumulation of lead and lag errors over time makes sequence identification progressively harder and limits read lengths (how many bases in a sequence can be read accurately). *Id.* at 44:9-15. The '161 Patent provides specific methods to correct dephasing via "re-phasing" sequencing data, enabling high-fidelity sequencing without signal-decline-limited read lengths. *Id.* at 40:8-11; 40:38-44; 44:16-23; 242:24-52; Figs. 33-34.

The '161 Patent also claims sequencing methods for "field flattening" and reducing "spectral crosstalk." *Id.* at 46:64-66; 46:36-39; *see also* FAC ¶¶112-114. "Field flattening" normalizes pixel intensity regardless of location, which could otherwise skew results. *Id.* at 46:31-44, 46:64-66. "Spectral crosstalk" is fluorescent detection in adjacent color detection channels, which can lead to detection of, *e.g.*, signal in a yellow channel from a green dye. *Id.* at 50:1-47.

The '161 claims are directed to innovations for determining the identity of nucleic acids at positions in a nucleotide sequence using specific methods for correcting for sequence lead and lag. FAC ¶116. Independent claim 1 claims a method for determining the identity of a nucleic acid at an interrogation position in SBS by obtaining a data set for one or more dye intensities at one or more nucleic acid positions in the sequence, determining the ratio contribution to dye intensity at said interrogation position from dye intensities at the interrogation position and at one or both of

subsequent and/or preceding nucleic acid positions, and applying the ratio contribution to the data to arrive at an identity for the nucleotide at said interrogation position. *Id.* at ¶117; '161 Pat. cl. 1. Dependent claims provide additional specificity on how the ratio contribution to dye intensity is determined (*e.g.*, cls. 2-4), the number of interrogation positions for which the nucleic acid identity is determined (cls. 6, 8), and the application of specific lead-lag compensation equations to determine the ratio contribution to dye intensity (cls. 7, 9-11). Dependent claims 13-19 add field flattening limitations, and 20-25 add spectral crosstalk reduction limitations.

Independent claim 26 claims a method for processing data for nucleic acids acquired from one or more channels in parallel, comprising performing SBS, determining ratio contributions to dye intensity, correcting for sequence lead and lag, and reconstructing the data. '161 Pat. cl. 26. Claims 27-30 add specificity on lead-lag compensation equations; claims 31 and 32 add field flattening and spectral crosstalk reduction, respectively. *Id.*, cls. 27-32.

Independent claims 33 and 36 (with dependent claims 34-35 and 37-38) are means-plus-function apparatus claims and system claims directed to processing data to determine nucleic acid identity, comprising means to apply sequence lead-lag compensation, field flattening, and spectral crosstalk reduction. *Id.*, cls. 33-38. Illumina does not separately address these claims, arguing without explanation that Claims 33-35 "encompass[] the same steps" as Claims 1, 13, and 20, while not stating any claims are representative of Claims 36-38. D.I. 26 ("Mot.") at 9-10.

**B.    The '161 Patent Prosecution History**

During prosecution, the USPTO initially rejected pending Claims 1 and 27 (which issued as Claims 1 and 26) as directed to non-statutory abstract ideas under § 101, applying the *Bilski* machine-or-transformation criteria. D.I. 22-2, Ex. CCC at 3-5. Applicants overcame these rejections by adding claim limitations that require sequencing a nucleic acid by SBS using nucleotides with fluorescent dyes. D.I. 22-2, Ex. DDD at 2, 9-10, 19. The USPTO found that the

amended claims were patentable because the specific claimed methods were not present in the prior art, (D.I. 22-2, Ex. CCC at 5), and determined the claims were not directed to abstract ideas. FAC ¶127. In particular, the Examiner found that the specific steps of obtaining data from SBS cycles and performing correction factors by determining ratio contributions at interrogation positions was patentable subject matter. D.I. 22-2, Ex. EEE at 2.

C.    **Illumina's Patent Claims And Statements During Prosecution**

Illumina has recognized that methods for addressing phasing issues in SBS are patent-eligible technological improvements. Indeed, it has made such arguments itself.

In 2020, 12 years after the priority date for the '161 Patent, Illumina obtained U.S. Patent No. 10,689,696 ("'696 Patent") with claims directed to methods of correcting phasing issues comprising performing SBS cycles, detecting signals, and performing phasing corrections by subtracting intensity values from adjacent cycles. Ex. 1 ('696 Pat.) at 44:64-45:21.[1] Like the '161 Patent, Illumina's '696 Patent requires SBS, detecting dye intensity signals, and performing phasing corrections that Illumina now argues are pure "mathematics." Illumina lists the '696 Patent on its virtual patent marking website for its sequencing products. D.I. 22, Ex. MM at 14.

Illumina has continued to prosecute applications in this family, including U.S. App. No. 16/899,716 ("'716 App.") with claims directed to methods comprising sequencing cycles, measuring intensity values, modifying and fitting data, and determining nucleotide identity. Exs. 2-3 ('716 App. OA Responses). In response to a § 101 rejection, Illumina argued:

> A human with pen and paper is no substitute for the claimed sequencing instrument and is 'not equipped to perform the claim limitations,' of using a sequencing instrument to capture and evaluate a set of cluster images . . . . Indeed, the human

---

[1] In considering a motion to dismiss, a court may take judicial notice of "matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Judicially noticeable public records include patents, patent applications, and prosecution histories. *Data Health Partners, Inc. v. Teladoc Health, Inc.*, 734 F. Supp. 3d 315, 320-22 (D. Del. 2024); *see also Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931-32 (Fed. Cir. 2014).

mind cannot physically see polynucleotides without aid of a sequencing instrument. Nor could the human mind use light signals to generate intensity values for polynucleotides using the claimed sequencing instrument. The use of a pen and paper would not enable the human mind to practically perform these limitations.

Ex. 2 ('716 App., May 20, 2025 OA Response) at 9-10 (quoting USPTO's 2024 Guidance Update).

Illumina further argued:

Similar to both *XY* and cases applying *XY* to specialized machines performing nucleotide sequencing and assays of genomic samples, the claimed technology is patent eligible because [the Illumina claims at issue] recite ***an improved base caller on a special-purpose computer or machine—that is, a sequencing instrument***— that (a) uses light detectors to capture and evaluate polynucleotide intensity values and (b) generates more accurate nucleotide base-calling results from improved image data analysis and classification of polynucleotide intensity values.

*Id.* at 10 (citing *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323 (Fed. Cir. 2020), MPEP § 2106.05(b)).[2]  In a subsequent response, Illumina likewise argued that "the amended claims are not directed to an abstract idea" but rather constitute "improvements to two-channel base calling technology."  Ex. 3 ('716 App., Nov. 10, 2025 OA Response) at 10.

In 2023, Illumina obtained U.S. Patent No. 11,676,275 ("'275 Patent"), which claims methods of base calling during sequencing that include calculating the out-of-phase fraction of labeled nucleotides and identifying nucleotides based on that fraction.  FAC ¶141; *see also* D.I. 22, Ex. NN at 48:18-66.  Illumina represented to the USPTO that "there is a need for methods and systems which improve the speed and accuracy of analysis of nucleic acid sequencing data."  FAC ¶142; D.I. 22, Ex. NN at 1:66-2:4.  Today, Illumina lists the '275 Patent on its virtual patent marking website for its sequencing products.  D.I. 22, Ex. MM at 5-6, 8-9. 12.

## III.    LEGAL STANDARD

"Any fact . . . that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).  "[P]atent

---

[2]   All emphasis added unless otherwise stated.

eligibility may be resolved at the Rule 12 stage only if there are no plausible factual disputes after drawing all reasonable inferences from the intrinsic and Rule 12 record in favor of the non-movant." *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022).

"The Supreme Court has established a two-step framework for evaluating patent eligibility under § 101." *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (*citing Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014)). Step One requires determining "whether the claim is 'directed to' a 'patent-ineligible concept,' such as an abstract idea." *Coop. Ent.*, 50 F.4th at 130 (*quoting Alice*, 573 U.S. at 217). If the claims are not directed to a patent-ineligible concept, they "satisfy § 101 and [the court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).

At Step Two, courts examine the claim elements individually and "as an ordered combination" to "determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217, 221. Patentees who adequately allege their claims contain inventive concepts survive a Rule 12(b)(6) motion. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126-30 (Fed. Cir. 2018).

## IV.    ARGUMENT

### A.    Illumina Impermissibly Generalizes the Claims

The § 101 inquiry is, at all times, directed to the claims as a whole. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016); *Alice*, 573 U.S. at 218 n.3. Illumina disregards this fundamental principle, instead collapsing all 38 claims of the '161 Patent into "three different phenomena associated with sequencing-by-synthesis." Mot. at 3.

This self-serving reduction of the claims ignores important differences between the independent and dependent claims. It is also fatally flawed because it "characterizes the claims at an impermissibly high level of generality." *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th

1373, 1379-80 (Fed. Cir. 2024).  For example, Illumina attempts to distill the claims down to "algorithm[s]" that are "simply numerical computations" (Mot. at 1, 3, 5-7, 12), but in doing so ignores the data collection and sequencing limitations of the claims.  Illumina's hand-waving at those limitations does not negate them, (*id.* at 4, 14), nor somehow transform the claims into reciting pure "mathematical" formulas or equations, (*id.* at 14-15).  Illumina's over-generalized approach is sufficient basis on its own to deny the motion.  *See Contour IP*, 113 F.4th at 1379-80 (reversing district court on Step One grounds); *see also Enfish*, 822 F.3d at 1337 (same); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1293 (Fed. Cir. 2020) ("[R]eiterat[ing] the Supreme Court's caution against 'overgeneralizing claims' in the § 101 analysis.").

## B.    Illumina Does Not Show Any Claim Is Representative

In relying on purportedly representative claims 1, 14, and 21, Illumina bears the burden "to prove [] that [] the representative claim[s] [are], in fact, representative, in that ***any differences*** among the claims are not material to the eligibility analysis (*i.e.*, the claims are substantially similar and are linked to the same ineligible concept)."  *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1291 (Fed. Cir. 2024).  Despite significant claim differences, Illumina makes only a token effort to meet this standard, (Mot. at 8-10), addressing each claim in a single conclusory sentence.

For instance, with respect to Claims 33-35, Illumina does not address any differences in scope between these means-plus-function claims and the purportedly representative claims, instead merely stating they recite "the same steps." Mot. at 9-10.  This is insufficient.  *See, e.g.*, *Uniloc USA, Inc. v. AVG Techs. USA, Inc.*, No. 16-393, 2017 WL 1154927, at *4 (E.D. Tex. Mar. 28, 2017), *aff'd sub nom. Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890 (Fed. Cir. 2019) ("means-plus-function claims have a narrower scope than non-means-plus-function claims" and "may be patent-eligible even when similar non-means-plus-function claims are not").  Illumina also concedes that certain dependent claims (cls. 7-11, 15, 24-25) recite "specific equations" (Mot.

at 8-10), but fails to address the specific differences of those claims anywhere in its motion.

Illumina's lack of meaningful claim analysis precludes an ineligibility finding as to those claims.[3] *See, e.g.*, *Pragmatus Telecom, LLC v. Genesys Telecomms. Lab'ys, Inc.*, 114 F. Supp. 3d 192, 199 (D. Del. 2015); *JSDQ Mesh Techs., LLC v. Fluidmesh Networks, LLC*, No. 16-212-GMS, 2016 WL 4639140, at *2-3 (D. Del. Sept. 6, 2016).

### C.    *Alice* Step One: The '161 Claims Are Not Directed To An Abstract Idea

#### 1.    The '161 Claims Recite Specific Improvements To SBS

The '161 claims are not directed to an abstract idea because they are rooted in specific technological improvements to DNA sequencing, in particular, SBS, not merely mathematical calculations involving generic data.  To determine what the '161 claims are "directed to," the correct inquiry is not "simply ask[ing] whether the claims involve a patent-eligible concept," but rather to "consider[] in light of the specification, . . . whether 'their character as a whole is directed to excluded subject matter.'"  *Enfish*, 822 F.3d at 1335 (cites omitted).

Indeed, the '161 specification describes concrete technical problems unique to DNA sequencing.  '161 Patent, Abstract ("[t]he methods of the invention include correcting one or more phenomena that are encountered during nucleotide sequencing, such as sequencing by synthesis methods[,]" including "sequence lead, sequence lag, spectral crosstalk, and noise resulting from variations in illumination and/or filter responses.").  In SBS, incorporation problems can cause lead and lag errors that accumulate over time (*id.* at 44:9-15), and other problems arising from "variations in illumination and filter response," (*id.* at 46:31-44), and "detection of dyes in adjacent

---

[3]    Moreover, "it is not an efficient use of the Court's time to address the patent eligibility of" the claims at issue "at the motion to dismiss stage, particularly where the parties dispute whether certain claims are representative[.]" *Intellectual Ventures I LLC v. Ubiquiti, Inc.,* No. 23-865-JLH, D.I. 19 at 1-2 (D. Del. May 21, 2024) (Ex. 4); *see also Adaptive Avenue Assocs., Inc. v. Micro Elecs., Inc.*, No. 21-1786-MN, D.I. 20 at 1-2 (D. Del. May 17, 2022) (Ex. 5).

color channels." *Id.* at 50:1-47.  The '161 Patent describes methods to address these SBS-related phenomena for DNA sequencing with improved accuracy.  *Id.* at 40:38-33; 44:16-23.

Illumina argues that the independent claims are directed to "reducing and/or correcting one or more phenomena that are encountered during sequencing."  Mot. at 12 (citing '161 Pat. at 1:50-53).  While this correctly recognizes that the claims solve sequencing-specific issues, it fails to address the particular improvements that each claim makes when applied to SBS:

- ***Claim 1*** is directed to a specific method for improving nucleotide identification during SBS by addressing sequence lead and lag—due to nucleotide incorporation errors.  The claimed method requires sequencing using fluorescently labeled nucleotides, obtaining intensity data, and applying ratio contribution analysis at each interrogation position, comparing dye intensities at adjacent positions to achieve higher fidelity sequencing.  FAC ¶¶116-117.

- ***Claim 14*** adds "field flattening" to address non-uniform illumination across the substrate surface that causes spatially correlated variations in pixel intensity degrading sequencing accuracy.  The claim obtains raw image data, generates a smoothed reference image using a low-pass filter, determines field flattening values, and produces a corrected image—a specific method to address imaging artifacts in DNA sequencers.  FAC ¶¶113, 135-136.

- ***Claim 21*** addresses spectral crosstalk—where broad fluorophore emission spectra cause signals from one dye to be detected in the wrong channel, reducing base-calling accuracy.  The method determines crosstalk factors for each fluorophore, constructs a crosstalk matrix, and applies it to correct intensity data.  FAC ¶¶114, 135-136.

The '161 claims thus each "focus on a specific means or method that improves the [SBS] technology."  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314-16 (Fed. Cir. 2016).  These specific improvements to SBS sequencers are akin to the improvements to the

functioning of computers, networks, or software that are useful for an application of those technologies, that courts have routinely held eligible. *See McRO*, 837 F.3d at 1314-16 (finding claims eligible where specific phoneme-to-morph rules improved animation through a novel algorithm); *see also Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151-52 (Fed. Cir. 2019) (finding claims eligible where defined permutations applied to data blocks detected systematic errors and enhanced data integrity); *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1371-72 (Fed. Cir. 2020) (finding claims eligible where a specific sensor configuration and signal-processing algorithms improved atrial fibrillation detection). Across these cases, the claims recite more than a result-oriented goal or functional description; they provide specific, non-conventional technical solutions that limit claim scope, not abstract ideas. So too with the '161 claims.

Moreover, the challenged claims do not present the preemption concerns that often motivate courts in abstract idea jurisprudence. The Supreme Court has emphasized that preemption is "the concern that drives" the § 101 inquiry. *Alice*, 573 U.S. at 216. The '161 claims raise no such concerns: they do not preempt all methods of correcting for dephasing or all SBS methods or foreclose all use of the underlying mathematical concepts. Researchers remain free to develop alternative correction algorithms. Indeed, Illumina purports to have done so itself, obtaining its own phasing correction patents years after the '161 Patent. *See* § II.C.

## 2.    Illumina Mischaracterizes The Focus Of The Claims

Illumina mischaracterizes the claims as abstract ideas by making a series of fundamental errors. First, Illumina relies on an impermissibly broad characterization of the claims, stripping them of nearly all of their language and ignoring the specification. *See Contour IP*, 113 F.4th at 1379-80. Illumina never articulates an "abstract idea" that fairly characterizes each of the claims. *See* Mot. at 12-16. Illumina's motion fails for this reason as well. *See Veeva Sys. Inc. v. Tact.ai Techs., Inc.,* No. 23-1032, 2024 WL 2848335, at *4 (D. Del. June 5, 2024) ("[T]he movant must

formulate a proposed 'abstract idea' and then persuade the court that the patent claim is 'directed' to that abstract idea."); *see also Redwood Techs., LLC v. Netgear, Inc.*, No. 22-1272-GBW, 2024 WL 4591852, at *5 (D. Del. Oct. 28, 2024).

Second, Illumina fails to properly grapple with the '161 specification and the FAC's discussion of the technological improvements of the invention. Mot. at 14-15. But neither the patent's written description nor Element's well-pled allegations can be disregarded—in fact, at this stage, each must be accepted and construed in favor of Element, along with all reasonable inferences therefrom. *See CardioNet*, 955 F.3d at 1371 ("[T]he district court erred by disregarding the written description's recitation of the advantages of the claimed invention."); *Aatrix*, 882 F.3d at 1128 (finding the district court erred in denying leave to amend complaint where amended allegations "contradict[ed] the district court's conclusion that the claimed combination was conventional or routine"). When properly considered, the '161 disclosures and Element's allegations confirm the claims are directed to specific improvements in SBS technology.

Third, Illumina argues that because the claims include limitations of "an algorithm" (cl. 1); "a formula" (cl. 14); and "a ratio" (cl. 21), these claims are "mathematical computations" that are ***necessarily*** "directed to an abstract idea." Mot. at 12-13. The law is not, and has never been, that the use of mathematics or a formula renders the claim patent ineligible. To the contrary, the Federal Circuit has recognized that not all claims that involve mathematical formulas are abstract. *Cal. Institute of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 988 (Fed. Cir. 2022) ("[An] alleged improvement is not patent ineligible simply because it employs a mathematical formula.").

While there is no "definitive rule to determine what constitutes an 'abstract idea,'" both the Federal Circuit and the Supreme Court "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at

12

1334.  Claims involving mathematical algorithms have repeatedly been found patent-eligible when they represent improvements to technological processes.  In *XY*, the Federal Circuit reversed a finding that claims directed to an improved method of operating a flow cytometry apparatus were abstract, explaining that "the formulas operate to achieve the improved result of the claimed method only when combined with the specific detectors and other flow cytometry limitations in the claims."  968 F.3d at 1331-32.  So too here:  the algorithms in the '161 Patent achieve improved sequencing results only when combined with the specific SBS process limitations.

Similarly, in *Thales Visionix Inc. v. United States*, the Federal Circuit held "[t]hat a mathematical equation is required to complete the claimed method and system does not doom the claims to abstraction."  850 F.3d 1343, 1349 (Fed. Cir. 2017) ("claims directed to a new and useful technique for using sensors to more efficiently track an object" satisfied Step One).  And in *Koninklijke*, the Court found claims patent-eligible where they "recite[d] a specific solution" that "enables the detection of persistent systematic errors in data transmissions that prior art systems were previously not equipped to detect."  942 F.3d at 1151.  Likewise, the '161 claims employ specific methods to correct SBS phenomena that prior art systems could not adequately address.

For its contrary view, Illumina relies primarily on one case:  *Cybergenetics Corp. v. Institute of Environmental Science and Research*, 490 F.Supp.3d 1237 (N.D. Ohio 2020), *aff'd without op.* 856 F. App'x. 312 (Fed. Cir. 2021).  But this out-of-circuit, non-binding case is readily distinguishable.  There, the claims were directed to "calculating a variance" and "using that variance and a linear [prediction] model to predict the identity of a person in a DNA sample containing multiple people, and calculating the likelihood that the prediction is correct."  *Id.* at 1245.  Contrary to Illumina's suggestion, the court did not find the claims abstract because they "called for computations using equations and ratios," (Mot. at 13); instead, those claims "recite[d]

13

mathematical algorithms to produce a numerical output *as the entirety of the method*" and were "directed toward the mathematical results themselves." *Cybergenetics*, 490 F.Supp.3d at 1247.

Simply put, the '161 claims are fundamentally different than those in *Cybergenetics*. The '161 claims do not employ math or an algorithm merely to produce a numeric output—instead, the claims use SBS physical components and, by applying novel algorithms to this process, correct for dephasing and other phenomena that impact SBS, *i.e.*, an SBS improvement. *See, e.g.*, '161 Pat. cls. 1, 8-11, 14-15, 21, 26, 28-32. The actual claimed advance here is more analogous to *CardioNet*, where claims recited specific technological components for detecting heartbeats and specific *rules* and *algorithms* for determining variability in beat-to-beat timing. 955 F.3d at 1368-73. Those claims were directed to an improvement in "cardiac monitoring" where the invention "detect[ed] beat-to-beat timing of cardiac activity, detect[ed] premature ventricular beats, and determin[ed] the relevance of the beat-to-beat timing to atrial fibrillation or atrial flutter." *Id.* at 1368. Relying on *McRO*, the Federal Circuit found that the claims "'focus on a specific means or method that improves' cardiac monitoring technology; they are not 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *Id.* (quoting *McRO*, 837 F.3d at 1314). Here also the '161 claims are focused on specific means to improve SBS technology, and are not directed to a result or effect that merely invokes generic process and machinery.

Fourth, Illumina argues the focus of the claims cannot be an improvement to SBS because the patent "does not claim any technological improvements to the physical process for performing [SBS], but is merely directed to code that is to be implemented by a general purpose computer." Mot. at 15. This mischaracterizes the claims, which (as Illumina has argued for its own claims, *see* § II.C) are directed to an improved base caller on a special-purpose machine—a sequencing

14

instrument.  Moreover, this argument requiring new ***physical*** improvements is contrary to law.  In *Contour IP*, the Federal Circuit rejected defendant's argument "that the claims simply employ known or conventional components that existed in the prior art at the time of the invention," because "that *alone* does not necessarily mean that the claim is *directed to* an abstract idea at step one." 113 F.4th at 1380 (emphasis in original).  Indeed, claims focused on inventive improvements of conventional systems have been regularly found eligible.  *Core Wireless*, 880 F.3d at 1362 (collecting cases).

### 3.    Sequencing Claims Like Those Here Cannot Be Performed By Hand

Illumina contends that the asserted claims "could be performed manually, by humans using pen and paper."  Mot. at 15.  This argument cannot withstand scrutiny.  For its similar claims, Illumina argued to the USPTO that, "[a] human with pen and paper is no substitute for the claimed sequencing instrument." Ex. 2 at 9.  Element agrees.  The '161 Patent is directed to a technological process—namely, SBS—not human processes using pen and paper.  Each '161 claim requires SBS using labeled nucleotides and transformation of intensity data generated by those labelled nucleotides during SBS.  Indisputably, a human cannot sequence DNA, detect fluorescent signals, or correct imaging artifacts using pen and paper.

Nothing in the record suggests scientists have long used these techniques with pen and paper.  A single observation that one exemplary equation to address one of the phenomena discussed in the patent "***may*** be written out," (Mot. at 16 (citing '161 Patent at 51:15-27)), does not support Illumina's position.  Illumina's reliance on *buySAFE* and *CyberSource* is misplaced. Mot. at 15.  Both cases involved claims directed to "well-known, and widely-understood" business concepts—third-party transaction guarantees and credit card fraud detection, respectively—that could be and were performed mentally.  *buySAFE, Inc. v. Google Inc.*, 964 F.Supp.2d 331, 335-37 (D. Del. 2013), *aff'd*, 765 F.3d 1350 (Fed. Cir. 2014); *see also CyberSource Corp. v. Retail*

*Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011).  Unlike those invalid claims where humans had historically performed the claimed mental processes, the '161 claims address complex problems unique to high-throughput sequencing technology that can analyze many millions of sequences at once, which Illumina itself emphasized in its own patents years later.  *See* § II.C.

*CardioNet* is instructive.  There, the Federal Circuit rejected a similar pen-and-paper argument, finding that "the written description does not disclose that doctors performed the same techniques as the claimed device" and "nothing in the record supports the district court's fact finding . . . that doctors long used the claimed diagnostic processes."  955 F.3d at 1370 (Fed. Cir. 2020); *see also McRO*, 837 F.3d at 1314 (disagreeing the claims were directed to automating conventional activity using a computer, given there was "no evidence that the process previously used by animators is the same as the process required by the claims").  Here, Illumina also offers no evidence that scientists ever corrected for sequence lead/lag, field flattening, or spectral crosstalk during SBS using pen and paper before the invention.

### 4.    Illumina's Statements To Obtain Its Own Patents Support Eligibility

Illumina's sworn statements to the USPTO contradict the positions it has taken in its pending motion to dismiss.  Illumina has sought and obtained claims directed to performing phasing corrections and other data manipulations on intensity data acquired from cycles of SBS.  *See* § II.C.  In doing so, Illumina argued to the USPTO that such claims are ***not*** directed to abstract ideas, but rather are directed to improvements in SBS.  Ex. 3 at 10.  Conversely, Illumina argues here that the '161 claims, which predate Illumina's patents and also include the limitations of obtaining sequencing data via SBS, correcting dephasing, and identifying nucleotides, are directed to abstract ideas.  Illumina cannot have it both ways.  If Illumina truly believes such claims are directed to patent-ineligible abstract ideas, Illumina has wrongly obtained and listed invalid patents on its marking website (D.I. 22, Ex. MM), and continues to pursue new claims in these families.

16

**D.    *Alice* Step Two: The '161 Claims Recite Inventive Concepts**

Because "the focus of the claim is a specific and concrete technological advance"—here, "an improvement to a technological process"—the court's "inquiry ends and the claim is eligible." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022); *see also Koninklijke*, 942 F.3d at 1151; *Core Wireless*, 880 F.3d at 1362; *Enfish*, 822 F.3d at 1339. But even assuming the Court proceeds to *Alice* Step Two, the '161 claims pass muster. The question is whether claim elements "individually and 'as an ordered combination'" contain an inventive concept sufficient to "'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217-18. Here, the claim language, intrinsic record, and well-pled allegations (which must be accepted as true) all show that this question should be answered in the affirmative. At the very least, there exists a factual dispute that precludes resolution of the motion at this early stage. *Berkheimer*, 881 F.3d at 1369 ("[T]he district court erred in concluding there are no underlying factual questions to the § 101 inquiry.").

**1.    The Claims Taken As A Whole Recite Inventive Applications**

Just as it did under *Alice* Step One, Illumina's analysis improperly relies on certain limitations in isolation, ignoring other limitations and thus the claims as a whole. *Alice*, 573 U.S. at 218 n.3. As discussed above, the '161 claims ***taken as a whole*** are directed to novel, improved SBS processes that address phenomena unique to that sequencing method—*i.e.*, sequence lead/lag, illumination variations, and spectral crosstalk. '161 Pat. at 44:16-45:41; 46:31-47:3; 50:1-51:42; cls. 1-38; FAC ¶¶102-118. Here, the ordered combination of claim elements—which Illumina fails to address—"present[s] an innovative method for sequencing DNA." FAC ¶139.

The '161 Patent claims methods for sequencing DNA with improved accuracy, not an abstract algorithm divorced from practical application. The claimed methods provide a specific improvement to SBS that, by addressing certain problematic phenomena, allow DNA to be

"sequenced with high fidelity." FAC ¶109; '161 Pat. at 44:16-27. Moreover, the USPTO confirmed the specific ratio contribution analysis was "not present in the cited prior art" and "not conventional, routine, nor well-understood." FAC ¶¶120-21; ¶131. These allegations preclude an ineligibility finding at this stage. *Aatrix*, 882 F.3d at 1127-28.

The '161 claims are distinguishable from those found ineligible in *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369 (Fed. Cir. 2016), and *CareDx, Inc. v. Natera, Inc.*, 40 F.4th 1371 (Fed. Cir. 2022). In both, the specifications admitted the implementation steps were all "well known, routine, and conventional." *Merial*, 818 F.3d at 1376-77; *see also Natera*, 40 F.4th at 1380. By contrast, the '161 Patent recites a specific ratio contribution method (*e.g.* '161 Pat. cl. 1(c)), which the USPTO found was not taught by the prior art, and Element alleges this limitation and others "were not conventional, well-understood, or routine." D.I. 22-2, Ex. CCC at 5; FAC ¶¶119-121.

Illumina ignores the established principle that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). In *Bascom*, the Federal Circuit reversed a 12(b)(6) dismissal, holding that though individual components were known, the "particular arrangement of elements" represented an inventive concept. *Id.* at 1350-52. For the '161 claims, the ordered combination of obtaining SBS dye intensity data, determining ratio contributions from intensities at adjacent positions, and applying those ratios to identify nucleotides is—at minimum—an unconventional arrangement that improves sequencing accuracy.

Dependent claims add further inventive concepts, which Illumina ignores by focusing solely on physical aspects of the claims. These claims "are directed to specific means or methods that improve the identification of nucleic acids" during SBS. FAC ¶137. Claims 13-19, 31, 34, and 37 recite "field flattening of background data"—correcting signal noise correlated to position

on a solid substrate. FAC ¶¶113, 135. Claims 20-25, 32, 35, and 38 recite "reducing spectral crosstalk"—accounting for dye detection in adjacent color channels. FAC ¶¶114, 135.

Illumina attempts to dismiss Element's factual allegations out of hand, (Mot. at 14), but Element's allegations regarding the technological nature of the invention, prosecution history, and state of the prior art are well-pled factual allegations that must be accepted as true. *See, e.g.*, *Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317-18 (Fed. Cir. 2019) (finding district court erred by not accepting as true "specific, plausible factual allegations about why aspects of [plaintiff's] claimed inventions were not conventional").

## 2.    Illumina Conflates Invalidity With Ineligibility

Illumina argues the claims lack inventive concept because SBS was known and the patent uses conventional equipment. Mot. at 16-19. This argument, however, improperly conflates novelty and non-obviousness under §§ 102/103 with patent eligibility under § 101. Step Two inquires whether non-abstract features provide an inventive concept—not whether the invention is novel. *See BSG Tech LLC v. BuySeasons, Inc*., 899 F.3d 1281, 1289-91 (Fed. Cir. 2018).

Illumina's prosecution history argument is wrong. Mot. at 20. First, the principle that "apply it with a computer" cannot transform an abstract idea into patent-eligible subject matter pre-dates *Alice*. 573 U.S. at 221-22 (citing *Mayo* and *Bilski*). And Illumina wrongly argues that the Examiner's pre-*Alice* suggestions to address the *Bilski* machine-or-transformation test is evidence that the claims lack an inventive concept. The amended claims are not abstract algorithms tied to generic technology: they integrate the ratio contribution limitations with physical SBS steps to be directed to a patent-eligible method for improving sequencing accuracy. *See, e.g.*, '161 Pat. cls. 1(a), 26(a). The Examiner agreed and allowed the claims, because ***the specific ratio-based correction methodology*** was a non-obvious technical improvement. D.I. 22-2, Ex. CCC at 5; FAC ¶120.

19

Illumina is wrong that adding "a computer" and "DNA sequencing by synthesis" cannot supply inventive concept. The claims here do far more than the generic computer implementations of *Alice*. They recite a specific sequencing and computational approach—*e.g.*, ratio calculations comparing dye intensities at an interrogation position with intensities at preceding and subsequent positions, as well as field flattening and addressing spectral crosstalk applied in a specific technological context. *See, e.g.*, '161 Pat. cls. 1, 8-11, 14-15, 21, 26, 28-32. This "ordered combination" providing "technical improvement" supplies the inventive concept for eligibility. *Bascom*, 827 F.3d at 1349-50.

### 3.    Factual Disputes Preclude Dismissal

In all events, there are factual disputes regarding whether the combination of elements in the '161 claims contain an inventive concept. *See Berkheimer*, 881 F.3d at 1368. To the extent Illumina disputes whether the specific SBS methodologies being claimed were well-understood, routine, and conventional, those are factual questions inappropriate for resolution at the pleading stage. *Id.* Element has pleaded, with support, the claimed methods "were not conventional, well-understood, or routine." FAC ¶¶116, 119-121, 138-139.

Illumina's own prior statements and actions also raise, at the least, serious questions about its arguments. Long after the '161 priority date, Illumina obtained patents claiming methods for phasing corrections and calculating fractions of out-of-phase nucleotides during sequencing. *See* § II.C; *see also* FAC ¶¶141-142. Today it touts those patents on its virtual marking website for its sequencing products (representing the patents are valid). Illumina cannot credibly argue the '161 claims lack an inventive concept, and are thus ineligible, given its own contrary representations.

## V.    CONCLUSION

For the foregoing reasons, Element requests that the Court deny Illumina's motion.

Dated: January 5, 2026

*Of Counsel:*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

Kevin P.B. Johnson
Andrew J. Bramhall
Margaret Shyr
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com
andrewbramhall@quinnemanuel.com
margaretshyr@quinnemanuel.com

David Bilsker
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
davidbilsker@quinnemanuel.com

Andrew Tigchelaar
295 5th Ave.
New York, NY 10016
(212) 849-7000
andrewtigchelaar@quinnemanuel.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
jsiew@ycst.com
dmackrides@ycst.com

*Attorneys for Plaintiff*
*Element Biosciences, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 5, 2026, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Kelly E. Farnan
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
farnan@rlf.com

Keith R. Hummel
Sharonmoyee Goswami
Jonathan D. Mooney
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
khummel@cravath.com
sgoswami@cravath.com
jmooney@cravath.com

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Jennifer P. Siew (No. 7114)
Daniel G. Mackrides (No. 7230)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
jsiew@ycst.com
dmackrides@ycst.com

*Attorneys for Plaintiff Element Biosciences, Inc.*